UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 1:19-MJ-00022 |
| | : | |
| JIEMIN BAI | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion for pretrial detention of defendant JIEMIN BAI. In support of this motion, the United States relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this matter.

## I.   Legal Principles Governing Requests for Detention.

The Bail Reform Act lists four factors that guide a court's pre-trial detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g). A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). When "risk of flight" is the basis for detention, the government must satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

Pursuant to 18 U.S.C. § 3142(f)(1)(A), a person may be preventatively detained pending trial when he is charged with a crime of violence, in this case a violation of 18 U.S.C. §§ 111(a) and (b). By its express terms, § 3142(g)(1) focuses on "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3156(a)(4)(A) defines a "crime of violence" as "an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." A violation of 18 U.S.C. §§ 111(a) and (b) is clearly a crime of violence within the meaning of § 3142(g)(1). Based on the facts of this case, §§ 111(a) and (b) was violated when the defendant forcibly assaulted an officer, the assault resulted in physical contact, and the physical contact resulted in physical injury.

Finally, under 18 U.S.C. § 3142(f)(2)(A), a person may be preventatively detained when he presents a risk of flight.

**II.     Factual proffer of the evidence supporting the charge against the defendant.**

On Wednesday, January 30, 2019, at approximately 1252 hours, United States Secret service ("USSS") Officers Justin Botzet, Stewart Busch, Susan Velasco and Sergeant Mark Ditty were assigned to Bike Patrol at the White House. The USSS officers were held in the area on the east side of 17th Street near the intersection with F Street in the Northwest quadrant of Washington D.C. for a movement of a USSS protected person. All of the officers are assigned to the United States Secret Service Uniform Division. All of the officers were in full uniform, which included vests with markings on the front, back, and sleeves, and a badge on the front of their vests, identifying the officers as USSS Officers.

While on this assignment, the Metropolitan Police Department (MPDC) was held near the west side of 17th Street near the intersection with F Street in the Northwest quadrant of Washington D.C. for a motorcade involving official representatives of a foreign government. The official representatives of a

foreign government were not under the direct protection of USSS, but were under the protection of the Department of State's Diplomatic Security Service with the assistance of the District of Columbia Metropolitan Police Department (MPDC). As discussed below, USSS officers on the scene agreed to assist with the protection of the motorcade.

MPDC officers approached the USSS officers and informed them that groups of demonstrators were positioned on the sidewalk on the east side of 17th Street with the intent of blocking the motorcade route upon its departure. The MPDC officers placed police tape stating "Police Line Do Not Cross" on the street side of the east sidewalk on 17th street and also identified to USSS several individuals as being seen at the Willard hotel earlier in the day attempting to block routes of travel for the official representatives of the foreign government. One of the individuals that MPDC identified was later identified with a United States Employment Authorization Card as the defendant, Mr. Jiemin Bai.

As the official representatives of the foreign government entered their motorcade, officers observed Mr. Bai walking up and down the east side of 17th Street in an apparent attempt to locate a path to the motorcade that was not blocked by officers. Upon departure of the motorcade carrying the official representatives of the foreign government, USSS officers witnessed Mr. Bai running north on 17th Street, following the path of the motorcade. Officers moved along 17th Street in an attempt to block Mr. Bai and others from gaining access to the motorcade. Mr. Bai ducked under the police tape on 17th Street, and began to move toward the motorcade. After Mr. Bai passed under the police tape, Sergeant Ditty extended his arm in an attempt to block Mr. Bai and instructed Mr. Bai to stop.

Officer Botzet moved forward to assist Sergeant Ditty as Mr. Bai tried to push past the officers in an attempt to get to the motorcade. Officer Botzet and Sergeant Ditty tried to control Mr. Bai as he continued to try to force his way past Officer Botzet and Sgt. Ditty. In the process, Sergeant Ditty fell to the ground and Mr. Bai landed on top of his right leg resulting in an injury. Sergeant Ditty immediately turned onto his side and started to grab his leg. Officer Botzet stayed on top of Mr. Bai and held him on the ground as the vehicles from the motorcade passed.

Sergeant Ditty was transported to GW Hospital by DCFD Medic #23. Sergeant Ditty has torn ligaments in his knee as a result of this incident, and he will need to undergo surgery to repair the injury.

Following his arrest, the defendant waived his rights and agreed to provide a statement to USSS agents. During the ensuing interview, the defendant stated that he had traveled to Washington, D.C. on January 30, 2019. The defendant stated that he frequently engages in protests against China in Washington, D.C. and New York. According to the defendant, he moved to the United States from China in 2016, and he moves from three to five times each month because he believes that Chinese spies are attempting to locate and assassinate him. The defendant claimed that he did not resist arrest after he and the officer fell to the ground, and that he was trying to deliver a letter about the persecution of Chinese citizens to members of the motorcade.[1]

In 2016, USSS interviewed Bai in New York after he approached a motorcade that he believed was carrying the Chinese Premier. In that case, Bai moved into the motorcade and stood in front of one of the vehicles, causing it to stop.

Bai also claimed that in November of 2018, a judge granted his request for asylum. USSS personnel contacted Homeland Security and Immigration and were able to confirm that on November 14, 2018, an immigration judge granted the defendant's petition for asylum.

### III.   The defendant should be detained.

Under the factors set forth in 18 U.S.C. § 3142(g), the defendant presents both a danger and a risk of flight.

As discussed above, the defendant committed a crime of violence when he made the conscious decision to cross under a clearly marked police line, and to physically engage an officer who was trying to block his access to a protected motorcade. The presence of the police line, and officers standing between protestors and the motorcade, made it clear that any attempt to reach the

---

1. Mr. Bai was given a copy of a PD-55 (Notification of Consular Office), and advised of his right to contact his country's nearest consular office or embassy without delay.

motorcade was likely to result in physical contact with the officers. The defendant ignored this deterrent, and tried to force his way past Sergeant Ditty and Officer Botzet, causing Sergeant Ditty to fall to the ground, seriously injuring his knee.

A consideration of the nature and circumstances of the offense also requires the Court to weigh the possible penalty the defendant faces upon conviction. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, because the assault involved physical contact and bodily injury to the officer, if the defendant is convicted under 18 U.S.C. §§ 111(a) and (b), he faces a maximum sentence of 20 years of imprisonment. In addition, the defendant also faces an additional period of imprisonment of not more than one year for violating 18 U.S.C. § 118 (Interfering in the Protective Functions of the USSS).

Further, the defendant poses a danger to members of the community, most notably law enforcement officers and Chinese officials in Washington, D.C. As the nation's Capital, Washington, D.C. frequently hosts foreign dignitaries engaged in official business with members of the United States government. Law enforcement organizations like the USSS are tasked with protecting foreign dignitaries. While individuals are free to non-violently express their views to foreign officials, the defendant's conduct clearly crossed a line and placed individuals, including the law enforcement officers, in danger.

The weight of evidence against the defendant is also strong. That evidence includes not only the testimony of law enforcement officers, but also surveillance video clearly showing the defendant crossing a police line, physically trying to force his way past USSS officers, and Sergeant Ditty falling to the ground grabbing his leg.[2]

---

2. Attachments 1-5 contain still images from one of the surveillance videos. The first image shows the defendant (red circle) before he crosses the police line onto 17th Street, as he is being shadowed by Sergeant Ditty who is identifiable by his yellow jacket (yellow arrow) and Officer Botzet (blue arrow) who was in the middle of a group of three other officers who were trying to prevent the defendant and others from reaching the motorcade on (cont . . .)

The defendant's characteristics demonstrate his danger and risk of flight. The history and characteristics of a person include, "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). At this time of this filing, the government does not have the benefit of a pretrial agency report regarding the defendant's background. It does not appear that the defendant has a criminal history in the United States, but at this time, this Office does not have any information regarding any criminal history from China.

However, there are a number of concerns based on the information currently known to the government. First, there are concerns reflecting a risk of flight. These include the lack of any clear ties to the District of Columbia; the lack of an identifiable employment history; and the lack of a fixed address. Second, the defendant's apparent paranoia about Chinese officials raises concerns regarding the defendant's mental state. Third, as discussed above, the defendant's actions in this case, and his prior actions in 2016, raise concerns affecting the safety of the community.

## IV.    Conclusion.

For the foregoing reasons, as well as those that will be set forth at a hearing on this motion, the government respectfully submits that there exists no condition or combination of conditions which would assure the return of this defendant to all future court appearances and the safety of any person or the community. Accordingly, the government requests that the Court order the pre-trial detention of the defendant.

---

17th Street. Images 2-5 show the defendant trying to push past the officers, resulting in the final image, Sergeant Ditty lying on the ground grabbing his leg. The images capture a time span of approximately eight seconds.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By: \_\_\_\_\_/s/_____
JOHN CUMMINGS
Assistant United States Attorney
Bar No. 986573
555 Fourth Street, N.W., Room 11-824D
Washington, DC  20530
John.cummings@usdoj.gov
(202) 252-7271